UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GRAYLIN SYLVESTER LEWIS          CIVIL ACTION

VERSUS          NO. 18-13939

ORLEANS PARISH SHERIFF'S OFFICE ET AL.          SECTION "J" (2)

## **REPORT AND RECOMMENDATION**

Plaintiff, Graylin Sylvester Lewis, was a prisoner incarcerated in the Orleans Justice Center ("the Orleans jail") in New Orleans, Louisiana, as a pretrial detainee at all relevant times. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Orleans Parish Sheriff's Office and various officers at the jail, including Chief Michael Laughin, Colonel Scott Colvin, Major Kevin Winnfield, Captain Bernadette Jenkins, Captain Johnson, Lieutenant Hugh Blanchard, Director Darnley R. Hodge, Sr., Terry Haynes and Warden Nicole Harris. Lewis alleges that while incarcerated in the jail for about six months from August 2018 until January 2019, he was denied access to the court and his counsel and was subjected to unconstitutional conditions of confinement. He seeks compensation for mental anguish and stress. Record Doc. No. 4-1 (Complaint at ¶ V).

On April 23, 2019, I conducted a telephone conference in this matter. Participating were: plaintiff pro se; Benjamin Kahn and Freeman Matthews, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

In his original complaint, Lewis cursorily alleged only that he was placed in administrative segregation on August 24, 2018, for 30 days, during which he was "denied access to legal materials, personal hygienes (sic) . . . shower, clean linen and materials to clean cell, . . . access to toiletries, . . . recreation (while in restraints) [and] access to my mail. I was not able to speak to my attorney. . . the shower is unsanitary due to mold, scum and dirt. The rec. area is infested with mold and spiders. The food is always cold. Transport bus [is] fill[ed] with mold and I sit on it for 4-9 hours." Record Doc. No. 4-1 at pp. 4–5.

In subsequent written submissions in response to the court's order that he detail his claims, Record Doc. No. 8, Lewis reiterated the claims asserted in his complaint and alleged that he was "denied access to the courts by (A) being refused legal materials, (B) being given legal advice by deputy's staff members and denied envelopes, paper and pens (C) delaying legal mail, incoming and outgoing . . [and jail officials] refusing to take me to court though they were timely and legally notified of my court date and time [and] being denied access to my attorney . . . ." Record Doc. No. 9 at pp. 7–8. He attached copies of his various jail grievances and the responses. Id. at pp. 10–31. He also alleged that "the sheriff is withholding my incoming mail. It took them eight days before they brought my legal mail to me. They are delaying mail from the Eastern District Court, because they know that it's a deadline for it." Record Doc. No. 13 at p. 2.

2

During his <u>Spears</u> testimony, Lewis clarified that the incidents about which he complains in this case occurred during the period of August 2018 through January 2019. He stated that he was then in jail on charges of being a convicted felon in possession of a firearm. He said he had been released on bond on this charge on April 17, 2019, and that his trial date is June 18, 2019.

He confirmed that his first claim is that he was denied access to the court in various ways during the subject time period. Specifically, Lewis stated that jail officials delayed his legal mail, failed to provide him with legal materials and interfered with his ability to talk to his lawyer, all in connection with his access to the Orleans Parish Criminal District Court where his current charges are being prosecuted. He testified that he is represented by counsel in his criminal case, a lawyer named Lawrence Gaillier, whom Lewis hired to provide him with representation in that case in May or June 2018. He stated that he was originally arrested on that charge in 2017 and granted a bond, but he was later rearrested and placed in jail after his bond was revoked in August 2018.

Lewis testified that jail officials failed to transport him from the jail to court on eight different occasions when he was scheduled for hearings in his criminal case. He stated that he was not brought to court on those occasions because he was "in administrative segregation . . . in the hole" for various disciplinary infractions in the jail.

He described administrative segregation as "lockdown" for "disciplinary action." He said that he was sentenced to 30-day periods in lockdown for separate disciplinary

violations six or seven times. Lewis alleged that these actions were "retaliation" after he frequently complained and asked to see ranking officers about problems and issues he saw in the jail. He alleged that jail officers were "picking at me, messing with me constantly" because his complaints usually escalated into Lewis speaking with ranking officers and making the lower-ranked officers to whom he originally complained "look bad" because "they couldn't handle the situation." He said the disciplinary charges against him were for "nothing serious . . . . foolishness," and included "defiance" and "not respecting the staff" while "speaking up for other people." He said defendant Captain Jenkins once sent him to lockdown for calling her "stupid or dumb." Lewis confirmed that he had attached some – though not all – of the grievance papers concerning these charges to his complaint.

Lewis testified that the hearings in Orleans Parish Criminal District Court he missed in his criminal case included motion, pretrial and bond hearings. He said, "I was in jail for a whole year with no bond" on the felon in possession of a firearm charge with no opportunity to "get with my lawyer and explain to the judge how the court took my bond back on error." He testified that his lawyer had gone to court on those occasions without him; that jail officials explained to the judge at those hearings that he had not been brought to court because of the disciplinary actions; and that the judge was "lenient" in giving them "the opportunity to bring me the next time." Lewis complained that "it was going on for so long [and] I couldn't even talk to my attorney" to explain it.

4

He added that while in lockdown, jail officials would not give him writing materials to write to his lawyer or the court to explain what was happening to him and that ranking officers did nothing until November 2018, when he started to receive stamped envelopes.

Lewis testified that his missed court dates in his criminal case No. 535-581 were on August 28, 2018, for a motion hearing and on September 4, 2018 for a pretrial conference. He stated that he was transported to court for a pretrial hearing by jail officials on September 27, 2018 because "I had got out of the hole." He said he was subsequently put back into lockdown and was not brought to court for pretrial hearings on October 5, 2018; October 12, 2018; October 22, 2018; October 26, 2018; November 2, 2018; and December 3, 2018. He said that on his one court appearance during this period on September 27th, nothing occurred because "I guess they weren't expecting me."

Lewis testified that after his final missed court appearance in early December, he was transported to court by jail officials four or five times. He denied that he was not taken to court because he was in administrative segregation, stating that inmates in disciplinary lockdown are in fact routinely taken to court as scheduled. He alleged that "this was a punishment that was going on dealing with me. I had to speak to the director [defendant Hodge] for him to start allowing me to go to court." He stated that on September 27th, Director Hodge saw him in response to one of Lewis's complaints and the director made jail officials take him to court on that day. He said he complained to

Hodge about his inability to see or speak to his lawyer on the phone or to receive writing materials or mail privileges to communicate with his lawyer while in administrative segregation. He alleged that if he had been transported to court as scheduled, his case might already have been addressed and, if a prison term resulted, he could already have been sent "upstate" to a state Department of Corrections facility, served his time and been "home" by now. He stated that jail officials were preventing him from getting "anything done" in court in his criminal case and were doing so as punishment for his various disciplinary infractions in the jail. Lewis testified that his bond was finally reset in the criminal court on April 3 or 4, 2019, and he was released on bond when an outstanding warrant for his arrest was resolved.

Asked about the process for the disciplinary charges against him, Lewis testified that he was given a "writeup" setting out his alleged violations each time; followed by a hearing before the disciplinary hearing officer, Sgt. Stamps, and a chance to speak on his own behalf – although it was a "no win situation, you might as well just plead guilty." He estimated that he had six or seven – maybe more – hearings before the disciplinary hearing officer, and he said he was found guilty on each occasion.

He complained that while he was in administrative segregation for the disciplinary violations, he could not use the phone to call his lawyer because there were no working telephones in lockdown. Lewis also stated that he had spoken to his lawyer or someone else from the lawyer's office a few times while in jail and that his lawyer also came to the

jail to see him whenever he requested a visit after being released from lockdown. Lewis estimated that he was usually sentenced to 30-day periods of time in lockdown. He said that when released from lockdown, he could talk to his lawyer and buy supplies from the jail store. He complained that while being disciplined in lockdown he was denied the privilege of buying supplies from the jail store and restoration of these privileges was once delayed for as long as two weeks after he was released from lockdown. He acknowledged that after the disciplinary lockdown periods ended, his store privileges were restored, but he complained that he should still have been allowed store privileges while in lockdown.

Lewis testified that after his final release from administrative segregation in early December 2018, he was transported to court for a hearing in his criminal case on December 17, 2018. He testified that he was returned to administrative segregation for another disciplinary violation in January 2019, but only for three days, during which time he did not miss a court date. He testified that in 2019 he was transported from jail to court "maybe four times" before he was released on bond. He stated that on the fourth of these appearances, he received a bond from the presiding judge in criminal court.

Lewis alleged that jail personnel "called the judge and told him that I was acting out . . . and this is what I feel, the judge took it upon himself and got personal and left me in jail all that time with no bond." He said he had a bond hearing in court for his criminal case on December 21, 2018, but the judge denied his motion for a bond on that date. He

acknowledged that his lawyer was present for that bond hearing, but Judge Willard denied his request for a bond on that date. He testified that he requested a bond again later in 2019 and at that subsequent hearing Judge Willard reversed his earlier position that Lewis was a flight risk and gave him a bond after it was shown that Lewis had not previously been personally served with a subpoena with which he failed to comply. Lewis testified that he was originally granted a bond and released pending trial when initially arrested on the pending felon in possession of a firearm charge in 2017, but his bond was subsequently revoked when the judge mistakenly found that Lewis had failed to comply with a subpoena, when in fact no subpoena had ever been served upon him. He testified that once convinced that he had never actually been subpoenaed, the judge re-issued the bond, but by then he had already been in jail for about a year with no bond.

As to his complaints about the conditions at the jail, Lewis described mold in the jail showers and on the seats of the buses used to transport him to court. He said the mold caused him to have shortness of breath, stomach aches and nausea. He stated that the inmates tried to clean the showers every night, but they did not have the proper cleaning supplies. He said they only had soap and water to try to keep the area clean. Lewis also complained that the food served at the jail was either too cold or not properly cooked or only properly cooked or hot on jail monitor inspection day. He acknowledged that he was fed three meals a day. He also complained that the linens and clothing were not properly

cleaned and that while in administrative lockdown he would have to "go six or seven days with no shower."

He concluded his testimony by saying that nothing was done by jail officials in response to his various grievances and complaints.

Before the <u>Spears</u> hearing, defendants filed three  motions seeking dismissal of plaintiff's claims: (1) Defendant Orleans Parish Sheriff's Office filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that it is not a legal entity capable of suing or being sued.  Record Doc. No. 15. (2) Defendant Darnley R. Hodge, Sr. filed a motion under Rule 12(b)(6) arguing that all claims against him are barred by absolute immunity because he is a Compliance Director appointed specifically by this court under a consent decree whose authority flows directly from the court. Record Doc. No. 25. (3) Defendants Sheriff Marlin Gusman, Nicole Harris, Michael Laughlin, Scott Colvin, Kevin Winfield, Bernadette Jenkins, Hugh Blanchard and Terry Haynes filed a motion for judgment on the pleadings on grounds that Lewis fails to state cognizable claims of violation of his constitutional rights and that they are entitled to qualified immunity. Record Doc. No. 26.

Lewis was provided with an opportunity after the <u>Spears</u> hearing to file written responses to these motions. Record Doc. No. 34. Lewis filed untimely responses on June 17, 2019, in which he re-alleged his allegations stated above, as well as a new allegation that defendant "Hodge should held accountable . . . his staff fabricated a story stating that

9

I did not want to attend court [and] . . . they . . . said that the judge had to call for me go to court." Record Doc. No. 35 at pp. 2-3. Lewis also attached the docket sheet from his criminal proceedings in the Orleans Parish Criminal District Court and his grievance request records. Record Doc. No. 35-1 at pp. 1-29.

Defendant Hodge was permitted to file a reply to plaintiff's opposition memorandum. Record Doc. Nos. 36, 37.

## ANALYSIS

I.    STANDARDS OF REVIEW

(A) SCREENING

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous, fail to state a claim upon which relief can be granted, or seek monetary relief for a defendant who is immune. 28 U.S.C. § 1915A(b)(1) and (2); Lewis, 589 F. App'x at 952;

Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

(B) <u>MOTIONS TO DISMISS AND ON THE PLEADINGS</u>

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

<u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 796 (5th Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007))).

"The Supreme Court's decisions in <u>Iqbal</u> and <u>Twombly</u> . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must 'accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." <u>Id.</u> at 803 n.44 (quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)) (internal quotation omitted).

The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments. Walch v. Adjutant Gen.'s Dep't, 553 F.3d 289, 293 (5th Cir. 2008). Defendants' motions address only the sufficiency of the allegations of the complaint as a matter of law, not whether the allegations are true. Thus, for purposes of these motions, the court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs.'" Jabary v. City of Allen, 2013 WL 6153241, at *3 (5th Cir. Nov. 25, 2013) (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)). "With respect to any well-pleaded allegations 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 664).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co., 313 F.3d 899, 904 (5th Cir. 2002). "The standard for dismissal for a Rule 12(c) motion for judgment on the pleadings is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." Wolfe v. Fidelity Nat'l Ins. Co., No. 06-4928, 2008 WL 89643 (E.D. La. Jan. 7, 2008) (Barbier, J.) (citing Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004); Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988)).

*   *   *

In this case, defendants' motions should be granted, and plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims, and because judicial immunity bars any claim against Director Hodge. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.    IMMUNITY OF DIRECTOR HODGE

Director Hodge's Rule 12(c) motion argues that he is this court's appointed monitor, entitling him to the protection of judicial immunity from any claims like those asserted by Lewis seeking monetary compensation. Applicable precedent supports that argument.

For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978) (citing <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871)); <u>Mays v. Sudderth</u>, 97 F.3d 107, 110 (5th Cir. 1996). "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in [his or her] judicial role." <u>Ammons v. Baldwin</u>, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); <u>accord</u> <u>Mays</u>, 97 F.3d at 110-11. This judicial immunity applies even if a judge is accused of

---

[1]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

acting maliciously or corruptly.  <u>Stump</u>, 435 U.S. at 356-57; <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967), <u>overruled in part on other grounds by Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), <u>as recognized by Hill v. Shelander</u>, 992 F.2d 714, 716 (7th Cir. 1993); <u>Mays</u>, 97 F.3d at 110-11.

In the past, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief.  Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity.  <u>Pulliam v. Allen</u>, 466 U.S. 522, 541-42 (1984).  However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983. The FCIA therefore statutorily overruled <u>Pulliam</u>'s holding regarding the availability of injunctive relief against a judge in his official capacity.  <u>Guerin v. Higgins</u>, No. 00-0244, 2001 WL 363486, at *1 (2d Cir. 2001) (unpublished); <u>Nollet v. Justices</u>, 83 F. Supp. 2d 204, 210 (D. Mass. 2000); <u>see also</u> <u>Bolin v. Story</u>, 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to Section 1983 limits the relief available against a federal judge to declaratory relief).  Thus, neither injunctive relief nor damages are available in a Section 1983 action against the judges. <u>Tesmer v. Granholm</u>, 114 F. Supp. 2d 603, 618 (E.D. Mich. 2000); <u>Nollet</u>, 83 F. Supp. 2d at 210.

Director Hodge stands in the shoes of judges in this instance. He has been recognized by this court as clearly and undisputably "an officer or agent of the Court and the functional equivalent of a court-appointed receiver." Jones v. Gusman, C.A. No. 12-859 (E.D.La.), Record Doc. Nos. 1199, report & recommendation adopted, Jones v. Gusman, 2018 WL 4964235, at *1 (E.D. La. Oct. 15, 2018). Both the Fifth Circuit and its district courts have consistently recognized that such officials "share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver." Davis v. Bayless, 70 F.3d 367, 373 (5th Cir. 1995); accord Crawford v. Gusman, 2018 WL 3773407, *2 (E.D.La. Aug. 9, 2018)(Lemelle, J.)(addressing Director Hodge); Short v. Gusman, 2019 WL 1326645, *3 (E.D.La. Mar. 25, 2019) (Barbier, J.).

In this instance, the sole basis of Lewis's claims against Director Hodge flow from his exercise of authority over the Orleans jail within the scope of his appointment by this court. Moreover, the only allegation made by Lewis of action taken directly or personally by Director Hodge is that he ordered jail officials to take Lewis from administrative segregation to the Orleans criminal court for an appearance in his criminal case when Hodge was advised by Lewis about his complaints. This is the essence of good faith in the exercise of the authority flowing to him from this court. Under these circumstances, Hodge is entitled to the protection of judicial immunity. His motion should be granted, and the claims against him must be dismissed under 28 U.S.C. § 1915A(b)(2).

III.    ACCESS TO COURT/LEGAL ASSISTANCE AND RETALIATION

Lewis alleges that his First Amendment rights were violated when he was not transported to court for pretrial hearings in his criminal case and denied the means to obtain legal assistance, all while incarcerated in disciplinary lockdown. In this regard, he alleges that he was treated differently from other inmates in lockdown as retaliation for the various complaints he made concerning the conditions of his confinement. These claims share certain common legal attributes.

As to retaliation, it is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts or to complain through proper channels about the conditions of his confinement. Walker v. Savers, 2016 WL 4151212, at *5 (5th Cir. Aug. 4, 2016) (citing Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006)); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years. It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred. With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part & reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66) (quotations and additional citations omitted); accord Walker, 2016 WL 4151212, at *5; Hanna v. Maxwell, 415 F. App'x 533, 535 (5th Cir. 2011).

    In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment.  Defendants had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and the prison warden.  The Fifth Circuit agreed with the district court that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  Id.

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .  The inmate must produce direct evidence of motivation or, the more probable scenario,

"allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added); accord Walker, 2016 WL 4151212, at *5.

A year after Woods was decided, the Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996). Significantly, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced. Id. at 356; Every v. Jindal, 413 F. App'x 725, 727 (5th Cir. 2011) (citing Lewis, 518 U.S. at 349-50; Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999)); Cochran v. Baldwin, 196 F. App'x 256, 257-58 (5th Cir. 2006) (citing Lewis, 518 U.S. at 350-51); Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996). In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. Id. at 349-50.

A few years ago in Morris, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of de minimis retaliatory acts can support a retaliation claim" under the First Amendment. Morris, 449 F.3d at 684. The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was de minimis, but whether any violation occurred at all. To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act. If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

Id. The Fifth Circuit held that

[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. Some acts, though maybe motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

. . . . Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .

With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The law in the Fifth Circuit

is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. Officials likewise may not retaliate against an inmate for using the grievance system. A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. The inmate must show more than his personal belief that he was the victim of retaliation. Mere conclusory allegations of retaliation are not enough.

Decker v. McDonald, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010), report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (citing Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988)) (additional citations omitted) (emphasis added); accord Walker, 2016 WL 4151212, at *5.

The Fifth Circuit's reasoning and rulings accord with the Supreme Court's holding in <u>Lewis</u> that a prisoner who brings a retaliation claim under the First Amendment must allege both retaliatory motive and actual injury to assert a claim. Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Accepting as true plaintiff's testimony and written allegations, he has not established a violation of his federal constitutional rights concerning retaliation, access to the courts or legal assistance. First, Lewis cannot show that defendants possessed retaliatory motive. The Fifth Circuit has stated that the existence of a "[legitimate] prison disciplinary report is highly probative, if not dispositive, of whether a defendant acts with a retaliatory animus." <u>Rankin v. Pearson</u>, 2013 WL 1305517, at *6 (S.D. Miss. Mar. 26, 2013), <u>aff'd</u>, 612 F. App'x 204 (5th Cir. 2015) (citing <u>Woods</u>, 60 F.3d at 1166); <u>accord</u> <u>Reese v. Skinner</u>, 322 F. App'x 381, 383-84 (5th Cir. 2009). The record of Lewis's conviction of disciplinary violations does not demonstrate "but for" causation; instead, it demonstrates that [defendants] had a reasonable, non-retaliatory motivation of maintaining jail order and security for the lockdown sentences resulting from his violations. <u>Walker</u>, 2016 WL 4151212, at *6 (quotation omitted) (citing <u>McDonald</u>, 132 F.3d at 231).

Significantly, Lewis's own testimony undermines his assertion that defendants' retaliatory motive was the "but for" cause of his failure to be transported to court. Lewis himself blamed the presiding criminal district court judge when he stated that after the judge was apprised of Lewis's numerous disciplinary violations, "the judge took it upon himself and got personal and left me in jail . . . ." Under these circumstances, Lewis cannot establish the kind of retaliatory intent by defendants necessary to establish a cognizable constitutional claim.

As to his access to courts and legal assistance claims, Lewis has failed to show any actual injury or actual infringement of his First Amendment right of access to the courts or denial of legal assistance arising from these circumstances. As discussed above, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced. Lewis, 518 U.S. at 356 (1996); Every, 413 F. App'x at 727; Jones, 188 F.3d at 325; Cochran, 196 F. App'x at 257-58; Eason, 73 F.3d at 1328.

The thrust of Lewis's claim is that he was prejudiced because he was unable to establish in court that he should be released on bond because the previous revocation of his bond that resulted in the subject incarceration was erroneous. However, as Lewis's testimony establishes, when he was brought to court, and a bond hearing was conducted, the presiding judge again denied him bond and ordered him detained. It was not until a subsequent hearing that Lewis, with the assistance of his counsel, was successful in his

attempt to win reinstatement of his bond. Clearly, his entitlement to bond reinstatement was not the slam dunk Lewis alleges.

Lewis asserts that he was denied his right to adequate legal assistance necessary to access the court. However, a prison need not provide its inmates with the best possible access to the courts, but only with assistance that meets minimum constitutional standards of providing access to the courts. Phillips v. Hust, 588 F.3d 652, 656 (9th Cir. 2009) (citing Bounds, 430 U.S. at 829; Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 856 (9th Cir. 1985)); Petrick v. Maynard, 11 F.3d 991, 994 (10th Cir. 1993); Brooks v. Soto, No. CV05-1618-DDP, 2009 WL 2025325, at *9 (C.D. Cal. July 7, 2009) (citing Bounds, 430 U.S. at 829; Lindquist, 776 F.2d at 856); Goodvine v. Gorske, No. 06-C-0862, 2007 WL 2207910, at *4 (E.D. Wis. July 30, 2007) (citing Campbell v. Miller, 787 F.2d 217, 229 (7th Cir. 1986)); Hargrove v. Henderson, No. 95-1601-CIV-T-17A, 1996 WL 467516, at *10 (M.D. Fla. Aug. 13, 1996), aff'd, 124 F.3d 221 (11th Cir. 1997). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); accord Manning v. Sumlin, 540 F. App'x 462, 463 (5th Cir. 2013) (citing Lewis v. Casey, 518 U.S. 343, 356 (1996); Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993).

Lewis acknowledged that he was continuously represented by counsel in his criminal case.  Under these circumstances, various courts have consistently held that a prisoner's right of access to the courts, as guaranteed by the Constitution and interpreted by Bounds, is clearly satisfied by his representation by counsel in his criminal proceedings.  Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998); Schrier v. Halford, 60 F.3d 1309, 1313-14 (8th Cir. 1995); Mackin v. Carpenter, 988 F.2d 1212, 1993 WL 82306, at *3 (5th Cir. 1993); Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986); Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir. 1985).

Lewis also acknowledged in his testimony that he was able to contact his counsel at all times when he was not in disciplinary lockdown and that his counsel made appearances in court on his behalf, even on occasions when Lewis was not transported to court. When he was transported to court, his first attempt to have his bond reinstated was denied, with the assistance of his counsel. His alleged inability while in disciplinary lockdown to contribute his own efforts was no cause of actual prejudice to his position as a litigant.  Lewis cannot establish any actual injury to his position as a litigant in these matters.

IV.    CONDITIONS OF CONFINEMENT

Lewis was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless of whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials

of the type alleged in this case. <u>McCarty v. Zapata Cty.</u>, 243 F. App'x 792, 794 (5th Cir.

2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of</u>

<u>Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d

521, 526 (5th Cir. 1999).  In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the
> Eight Amendment to provide both pretrial detainees and convicted inmates
> with basic human needs, including medical care and protection from harm,
> during their confinement; and (2) that a state jail official's <u>liability for</u>
> <u>episodic acts or omissions cannot attach unless the official had subjective</u>
> <u>knowledge of a substantial risk of serious harm</u> to a pretrial detainee but
> responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650 (emphasis added).

Here, nothing in plaintiff's particular situation or in the circumstances concerning

his conditions of confinement as described in his written submissions and <u>Spears</u> testimony

leads to an inference that the conditions he described were the result of a prison official's

act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence

of an identifiable intended  condition or practice" or that the "official's act or omissions

were sufficiently extended or pervasive, or otherwise typical of extended or pervasive

misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645.

Thus, the complained-of harm is a particular act or omission of one or more officials, and

the deliberate indifference standard enunciated in <u>Estelle</u>, 429 U.S. at 104, applies.

<u>Olabisiomotosho</u>, 185 F.3d at 526; <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th

Cir. 2009).

26

Applying this standard, Lewis's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of harm." Farmer, 511 U.S. at 847. To rise to the level of a constitutional violation, the conditions must be "so serious as to deprive [plaintiff] of the minimal measure of life's necessities," in this case the basic human need for food and appropriate living temperatures. Alexander v. Tippah Cty., 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Southard, 114 F.3d at 551 (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used

in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Lewis's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff – cold food, lack of telephone and jail store privileges while in disciplinary lockdown, mold in the showers and bus seats and lack of cleaning supplies – while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Lewis alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

The Constitution requires that prison officials provide prisoners with only reasonably adequate food, shelter and sanitation. Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (citing Farmer, 511 U.S. at 832). Courts have repeatedly held that the Constitution does not mandate prisons with ideally comfortable surroundings or commodious conditions. Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez, 522 F.3d 556, 560 (5th Cir. 2008).

None of Lewis's allegations about the conditions he experienced establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four

days to raw sewage from overflowed toilet in his cell)); Eady v. Head, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment."); Davis v. St. Charles Par. Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215; Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutt v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. <u>Id.</u> (quoting <u>Wilson v. Seizer</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Lewis do <u>not</u> rise to the level of a constitutional violation. The conditions he experienced in the Orleans jail were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no serious physical injuries as a result of any allegedly unsanitary conditions. Unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury <u>resulting</u> <u>from</u> the challenged conditions." <u>Sprinkler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994).

Lewis has not alleged serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning unsanitary conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

As to his complaints about cold food, Constitutional standards require only that prison authorities provide an inmate with "sufficient nutritional value to preserve health." Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999); Green v. Farrell, 801 F.2d 765, 770 (5th Cir. 1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)). The Constitution does not require that convicted inmates be provided with food at particular temperatures or every culinary amenity which one may find desirable. Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rec'd. on other grounds sub nom., Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman, 559 F.2d at 291); Murray v. Matty, 1985 WL 4948 at *1 (E.D. Pa. 1985); see Hamm v. DeKalb CTY., 774 F.2d 1567, 1575 (5th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); McCoy v. Good, 255 F.Supp.2d 233, 260 (S.D.N.Y. 2003) (denial of warm food is not, by itself, a deprivation of the minimal civilized measure of nutrition so as to support prisoner's Eight Amendment claim challenging conditions of

confinement); <u>Abdul-Akbar v. Dep't of Corrs.</u>, 910 F.Supp. 986, 1006 (D. Del. 1995),

<u>judgment aff'd</u> 111 F.3d 125 (3d Cir. 1997) (prison officials did not violate the Eight

Amendment where an inmate alleged that officials served cold meals on unsanitary carts

because inmate failed to demonstrate that he was denied an "identifiable human need").

     Many of Lewis's complaints about the conditions of his confinement are based on

his assertion that he was denied certain privileges while in disciplinary lockdown,

including telephone access, prison store purchases, daily showers, writing materials and

recreation. To whatever extent he asserts a due process claim in this regard, he fails to

state a cognizable constitutional claim.

     In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the Supreme Court held that

constitutionally protected liberty interests  "will generally be limited to freedom from

restraint which . . . imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484 (citations omitted).  Lewis

was a pretrial detainee, not yet a convicted prisoner, at the time of the events about which

he complains. Deprivation of privileges did not present such an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life"giving rise to

a due process violation.

     For all the foregoing reasons, Lewis's claims concerning the conditions of his

confinement in the Orleans jail fail to state cognizable claims of violation of his

constitutional rights and should be dismissed.

V.    <u>IMPROPER DEFENDANT: SHERIFF'S OFFICE</u>

Counsel for defendant Orleans Parish Sheriff's Office correctly argues in its motion that plaintiff's complaint against the Sheriff's Office should be dismissed for failure to state a claim because the Sheriff's Office is not a legal entity capable of suing or being sued.

As a matter of law, the Sheriff's Office is clearly not a legal entity capable of being sued. <u>Martin v. Davis</u>, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (Berrigan, C.J.) (citing  La. Rev. Stat. § 33:361; <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); <u>Manley v. State</u>, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); <u>Norwood v. City of Hammond</u>, No. 99-879, 1999 WL 777713, at *3 (E.D. La. 1999); <u>Boudreaux v. Bourgeois</u>, No. 98-3809, 1999 WL 804080, at *3 (E.D. La. 1999); <u>Dugas v. City of Breaux Bridge</u>, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); <u>accord</u> <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988).   The State of Louisiana grants no such legal status to any law enforcement office or department. <u>Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't</u>, 350 So. 2d 236 (La. App. 3d Cir. 1977). The Sheriff's Office is not a "person" for purposes of Section 1983 liability. Under these circumstances, all claims against the "Orleans Parish Sheriff's Office" must be dismissed, and Lewis has failed to state a claim upon which relief can be granted as to this particular defendant.

33

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that defendants'
motions, Record Doc. Nos. 15, 25 and 26, should be **GRANTED**, and that plaintiff's
complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure
to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions,
and recommendation in a magistrate judge's report and recommendation within fourteen
(14) days after being served with a copy shall bar that party, except upon grounds of
plain error, from attacking on appeal the unobjected-to proposed factual findings and
legal conclusions accepted by the district court, provided that the party has been served
with notice that such consequences will result from a failure to object.  Douglass v.
United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28
U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___25th___ day of June, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective
December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.